COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bray and Senior Judge Overton
Argued by teleconference


KEDRA LANAE HARRIS

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 2840-97-1          JUDGE JAMES W. BENTON, JR.
                                         JUNE 22, 1999
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                   Alfred W. Whitehurst, Judge

           Danny S. Shipley for appellant.

           Kathleen B. Martin, Assistant Attorney
           General (Mark L. Earley, Attorney General, on
           brief), for appellee.


     The trial judge convicted Kedra Lanae Harris of possessing

cocaine with the intent to distribute and conspiracy to distribute

cocaine.  See Code §§ 18.2-248 and 18.2-256.  Harris contends the

evidence was insufficient to convict her of either offense.  She

also contends the trial judge erred by granting the Commonwealth's

motion for a continuance during the trial.  Because the evidence

was insufficient to prove Harris possessed cocaine with the intent

to distribute and to prove a conspiracy, we reverse the

convictions and dismiss the indictments.

     *Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

I.

Whenever an appellant challenges the sufficiency of the evidence, "we must view all the evidence in the light most favorable to the Commonwealth and accord to the evidence all reasonable inferences fairly deducible therefrom." Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988). "However, whether a criminal conviction is supported by evidence sufficient to prove guilt beyond a reasonable doubt is not a question of fact but one of law." Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986).

The evidence proved that on January 13, 14, and 17, 1997, Officer Reardon sent an informant to purchase illegal drugs in the house where appellant lived. On each occasion, the informant entered the house and soon returned with cocaine. While the informant was making the purchases, Reardon observed numerous persons walking into the residence and leaving shortly after entering. Based on these events, the police obtained a search warrant and searched the house for evidence of drug distribution. When the police entered the house, they secured "the individuals inside the house . . . [and] took note of where they were." Appellant was upstairs in her room with two very young children. The police recovered a pellet rifle upstairs. However, the record contains no reference to any other items seized upstairs in the house.

-

In the downstairs area of the house, the police recovered 1.13 grams of cocaine and a pager.  Although the record does not indicate the number of persons present in the house, at least $65 was taken from one individual, who was not appellant.  The police also seized $640, which was on the floor in the downstairs portion of the house and not claimed by any of the individuals who were present.  In addition, the police found a rifle, 150 small ziploc bags, which were described as "some packaging material," and a digital scale outside the residence at the back door.  A small quantity of marijuana was also recovered from the house; however, the record does not indicate where the marijuana was located.

Officer Reardon found Charles Harris and other individuals in the downstairs area of the house.  Charles Harris was arrested for possession of cocaine with intent to distribute and conspiracy to distribute cocaine.  The police arrested appellant and charged the same offenses.  After Officer Reardon read appellant Miranda warnings, appellant responded to Officer Reardon's questioning as follows:

Q:  How long have you lived at [the house]?

A:  About four years.

Q:  How long have you been selling cocaine
at [the house]?

A:  Off and on about 1 to 2 years.

Q:  During that time period, how much
cocaine have you sold at [the house]?

A:  Less than an ounce.

-

Q: What have you done with the monies you received from selling cocaine?

A: Take care of my children.

Q: Who sells cocaine with you at [the house]?

A: Charles Harris.

Q: How long have you and Charles been selling cocaine at [the house]?

A: Off and on for about two weeks.

Q: How much rent do you pay to stay at [the house]?

A: If my grandma needs a bill to be paid, I'll try to help her out.

Q: How many children do you have that live with you at [the house]?

A: Two.

Q: What do you do with the children when cocaine is being sold and used at [the house]?

A: They be either with my grandma upstairs or at my aunt's house.

Q: Who smokes cocaine at [the house]?

A: My uncle and my cousin.

Q: Do you use cocaine?

A: No.

Q: Do you use marijuana?

A: Yes.

Q: How often do you smoke marijuana?

A: Often.

Q: Are you addicted to marijuana?

-

A: No.

Q: What do you do with your children when you smoke marijuana?

A: They don't be around.

Q: When was the last time you sold cocaine prior to being arrested?

A: About a week.

Q: When was the last time you bought cocaine?

A: Yesterday.

Q: How much did you buy?

A: About a gram.

Q: What did you do with that cocaine?

A: Gave it to my cousin, Terry Lyles, to sell.

Officer Reardon testified he did not "receive any information from [appellant] . . . that she was dealing with anybody else other than . . . Charles Harris and . . . Terry Lyles." He also testified that he believed that appellant and Charles Harris were relatives, but did not know what the relationship was.

Officer Reardon further testified that he found appellant, appellant's "belongings, . . . her children and her children's belongings . . . [in] her bedroom . . . upstairs." Officer Reardon testified that appellant and her children "all stayed in the same room, [containing] a few toys and her clothes and their

-

clothes."  He could not recall whether he found any of appellant's belongings in other parts of the house.

## II.

"Possession with intent to distribute is a crime which requires 'an act coupled with a specific intent.'"  Stanley v. Commonwealth, 12 Va. App. 867, 869, 407 S.E.2d 13, 15 (1991) (en banc) (citation omitted).  Thus, the principle is well established "that for a defendant to be convicted of possession of a controlled substance with the intent to distribute, the Commonwealth must prove that the defendant possessed the controlled substance contemporaneously with his [or her] intention to distribute that substance."  Id.

The evidence does not prove who sold cocaine to the informant.  The evidence proved that when the police entered the house, appellant was in the room she rented upstairs.  No cocaine was recovered from appellant's person or immediate presence.  The evidence also proved that the police arrested other individuals downstairs, where the police found 1.13 grams of cocaine.  Charles Harris, who had been selling cocaine from the house, was arrested when the police entered the house. Appellant's presence in the house where she rented a room is insufficient to prove beyond a reasonable doubt that she possessed the cocaine the police seized in the house.  See Clodfelter v. Commonwealth, 218 Va. 619, 623, 238 S.E.2d 820, 822 (1977).  In order to prove that appellant constructively

-

possessed the cocaine, the Commonwealth was required to prove facts and circumstances that indicated that she was aware of the presence of cocaine and exercised dominion and control over it. See Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986). Moreover, in order for circumstantial evidence to prove guilt beyond a reasonable doubt, it must be wholly consistent with guilt and wholly inconsistent with innocence. See Bishop v. Commonwealth, 227 Va. 164, 169, 313 S.E.2d 390, 393 (1984).

Although appellant knew that Charles Harris sold cocaine, and appellant had sold cocaine in the past, that evidence does not prove that she exercised dominion over any cocaine Charles Harris possessed. No evidence proved that appellant had given the cocaine to Charles Harris. The officer testified that he believed that Charles Harris was appellant's brother but was not certain of their relationship. Furthermore, appellant did not own the house. Although she was a lessee, the evidence did not prove whether she leased more than the room she occupied. The officer testified that her "belongings" and her children's "belongings" were in her bedroom. He could not recall whether she had "belongings" in other parts of the house. The statement that the officer took from appellant indicated that appellant's grandmother, uncle, and cousin also had some connection to the house.

"While a conviction may properly be based upon circumstantial evidence, suspicion or even probability of guilt

-

is not sufficient." Craig v. Commonwealth, 215 Va. 260, 261, 208 S.E.2d 744, 745 (1974). "Suspicious circumstances, including proximity to a controlled drug, are insufficient to support a conviction." Behrens v. Commonwealth, 3 Va. App. 131, 135, 348 S.E.2d 430, 432 (1986). Here, only suspicious circumstances connect appellant to the cocaine found in the downstairs area of the house where Charles Harris was arrested.

### III.

To convict an accused of conspiring to distribute a controlled substance, the Commonwealth must prove beyond a reasonable doubt not only that two or more persons intended to distribute the controlled substance, but "that the two were acting in concert." Jones v. Commonwealth, 11 Va. App. 75, 82, 396 S.E.2d 844, 848 (1990). There must be some showing that an agreement existed between the parties. See Fortune v. Commonwealth, 12 Va. App. 643, 647, 406 S.E.2d 47, 48-49 (1991). However, an agreement "to distribute drugs cannot be inferred" from mere "[p]roof that two persons possessed drugs in the same dwelling." Jones, 11 Va. App. at 82, 396 S.E.2d at 848.

Although the arrest warrant charged appellant with "conspir[ing] with Charles Harris to sell cocaine," the indictment more generally charged that "between January 1, 1997 and January 16, 1997, in the City of Norfolk, . . . [appellant] did unlawfully and feloniously conspire . . . to distribute cocaine." The Commonwealth argues that appellant's admission

-

that she and Charles Harris sold cocaine from the residence "off and on for about two weeks," proved a conspiracy. Further, the Commonwealth argues that appellant's statement that she bought a gram of cocaine the day before her arrest and gave it to her cousin to sell supports the conspiracy conviction.

The evidence fails to prove beyond a reasonable doubt that appellant participated in a conspiracy to distribute cocaine during that period in the City of Norfolk. Although appellant's statement proved that both she and Charles Harris sold cocaine from the house, proof of an agreement was not established beyond a reasonable doubt. Proof that two individuals sold drugs from the same house, "standing alone, does not constitute a conspiracy . . . [because] evidence of a distribution offense absent an agreement will not suffice to support a conspiracy conviction." Zuniga v. Commonwealth, 7 Va. App. 523, 528, 375 S.E.2d 381, 385 (1988). The evidence does not exclude the reasonable hypothesis that appellant and Charles Harris sold cocaine independent of each other, although from the same residence. No evidence proved that the distributions were the product of "'an agreement between [appellant and Charles Harris] . . . by some concerted action to commit an offense of distribution.'" Heacock v. Commonwealth, 228 Va. 397, 407, 323 S.E.2d 90, 96 (1984) (citation omitted). As we have previously stated, "[t]he agreement is the essence of the conspiracy offense." Zuniga, 7 Va. App. at 527-28, 375 S.E.2d at 384.

-

Absent evidence of an agreement between appellant and Charles Harris, the prosecution must fail.

Furthermore, appellant's statement to Officer Reardon that she recently provided cocaine to Terry Lyles to sell does not support proof of a conspiracy in Norfolk. No evidence proved where that distribution or agreement occurred. No inference arising from the cocaine recovered by the police from the portion of the house where Charles Harris was found, which is the basis for the prosecution, can, by itself, prove the conspiracy. See Jones, 11 Va. App. at 82, 396 S.E.2d at 848. No evidence connects that cocaine to Lyles or to appellant.

For these reasons, we reverse the convictions and dismiss the indictments. We need not address the continuance issue.

Reversed and dismissed.

-